Bron Rammell, Idaho State Bar No. 4389
May, Rammell & Wells, Chartered
216 W. Whitman / P.O. Box 370
Pocatello, Idaho 83204-0370
Telephone: (208) 233-0132
Facsimile: (208) 234-2961

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAN COPELAND, | CASE NO. 4:10-CV-00089 |
| Plaintiffs, | |
| vs. | |
| COUNTY OF BANNOCK, STATE OF IDAHO; ROBERT POLEKI, individually and in his capacity as a County Clerk for the County of Bannock, TOM SELLERS, individually | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendants. | |

COMES NOW Dan Copeland, by and through his attorneys of record, May Rammell & Wells, Chtd., and hereby files this Complaint against Defendants as follows:

### PRELIMINARY STATEMENT

This is a civil rights action in which the Plaintiff seeks relief from Defendants for their violations of Plaintiff's rights guaranteed by the United States Constitution. These rights are further secured by the Civil Rights Act of 1871, codified as 42 U.S.C. §§1983 and 1988, and by the laws and the Constitution of the State of Idaho. Plaintiff seeks compensatory and punitive damages; affirmative and equitable relief; an award of attorney fees, costs and interest; and other and further relief as this Court deems just and equitable.

### JURISDICTION AND PARTIES

1. This Court has jurisdiction over this action under the laws of the State of Idaho and the United States, including 42 U.S.C. §§ 1983, 1988.

2.     This action arises under the United States Constitution and federal law, including the provisions of the Fifth and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. §§§ 1983, 1985 and 1988, and Idaho law.

3.     This Court has jurisdiction over these claims pursuant to 28 U.S.C. §1343 and 42 U.S.C. §1983.

4.     At all times relevant to this cause of action, Plaintiff Dan Copeland was a resident of Bannock and Bingham Counties, State of Idaho.

5.     At all material times, Dan Copeland was not a public figure.

6.     Bannock County is a political subdivision of the State of Idaho.

7.     Defendant Robert Poleki is a resident of Bannock County, State of Idaho.

8.     Defendant Robert Poleki is sued in his individual capacity and in his capacity as County Clerk for the County of Bannock in Idaho.

9.     Defendant Tom Sellers is a resident of Bannock County, State of Idaho. Defendant Tom Sellers is sued in his individual capacity.

10.    All Defendants are sued pursuant to 42 U.S.C. § 1983, and Chapter 9, Title 6 Idaho Code.

11.    A Notice of Tort Claim pursuant to Idaho Code Title 6, Chapter 9, was submitted to Bannock County on August 30, 2017.

**FACTS**

12.    The preceding paragraphs are renewed and incorporated herein by this reference.

13.    Dan Copeland worked for Bannock County for nearly 13 years in the Public Works Department.

14.    He began working for Bannock County on approximately March 9, 2004.

15.     By the time he began working for Bannock County, he had cultivated and acquired considerable skills in all phases of road construction, construction management, reclamation and environmental clean up.

16.     Mr. Copeland had cultivated a reputation that would have allowed him to participate in work or business opportunities that were equal to or more lucrative than the work he decided to take at Bannock County as a Road and Bridge Superintendent.

17.     In part, Mr. Copeland took the position at Bannock County because his wife was from Southeast Idaho, and he wanted to work in a place where he could spend time with her and his family and avoid extensive travel and absences from home.

18.     At least one County commissioner called him one of the best and hardest workers in the County.

19.     Throughout his time working at Bannock County, Mr. Copeland was given increasing responsibility.

20.     He started as a Road and Bridge Superintendent, and as he was given more work and placed in charge of additional departments, the title of his  position became Public Works Director.

21.     Circumstances began to change in late March of 2017, when Bannock County Clerk, Robert Poleki, began making statements or publishing information which impugned the honesty, integrity, virtue and reputation of Dan Copeland.

22.     Sometime in the spring of 2017, Mr. Poleki concluded that $623,000 or more in money was missing from the Bannock County Landfill budget.

23. Around the same time, he decided that Mr. Copeland was responsible for the shortfall and other discrepancies.

24. He instigated an investigation and forensic audit into Mr. Copeland.

25. As part of his investigation and audit, neither he nor his investigators spoke with the former Chairman of the Bannock County Commissioner's office in charge of the Public Works Department, Howard Manwaring.

26. Had he or his investigators spoken to Mr. Manwaring, he would have discovered that Mr. Manwaring and then Deputy County Prosecuting Attorney, Jared Johnson, had interviewed individuals about Mr. Copeland and had concluded there was no basis to believe any criminal activity had occurred.

27. As an elected official, not answerable to the Bannock County Commissioner's office, however, Mr. Poleki pushed the audit and investigation into Mr. Copeland.

28. As Mr. Poleki, on behalf of himself and the county, began making public statements about the investigation and the alleged necessity of an audit, Mr. Copeland attempted to defend himself, but was denied the information, records or opportunity to adequately do so.

29. Mr. Copeland made records requests for county records, including the audit and investigation records to enable him to respond.

30. He was denied access to the records he requested.

31. Because he was merely an employee of Bannock County, without access to the investigation, Mr. Copeland did not have the power to publicly refute the

statements and inferences that Mr. Poleki and Bannock County were making against him in the media.

32.  Around January 10, 2019, Mr Poleki and Bannock County released the audit and investigative reports to the press.

33.  The Defendants never released the audit and reports to Mr. Copeland prior to their release of the records and information to the press, despite Mr. Copeland's public records requests.

34.  Mr. Copeland was not aware of the contents of the reports or audit until January of 2019, and was therefore unable to respond to the allegations until they were published to the public by Defendants.

35.  Mr. Copeland and his family have been forced to endure intense scrutiny, hatred, contempt and public ridicule as a result of the defamatory and libelous statements made by Mr. Poleki and Bannock County.

36.  The statements made by Mr. Poleki while representing Bannock County as its clerk, include verbal and written words to the press, employees of Bannock County, and the public.

37.  Sometime prior to taking the "bully pulpit" on behalf of himself and Bannock County on January 10, 2019, Mr. Poleki had received information that there would be no prosecution of Mr. Copeland for criminal or other misconduct.

38.  Dissatisfied with the result, Mr. Poleki, on behalf of himself and Bannock County, decided to go to the press and malign Mr. Copeland once again, by publishing defamatory information.

39.     Over the course of nearly 2 years, Mr. Poleki, individually and on behalf of Bannock County, Idaho repeatedly published defamatory information against Dan Copeland, causing this lawsuit.

40.     Beginning with the most recent publications, the information published by Defendants includes but is not limited to:

a.      On January 10, 2019, during a Thursday afternoon press conference at the Bannock County Courthouse, Mr. Poleki, representing Bannock County, said that he had "found illegal activities" by Mr. Copeland and that Mr. Copeland did "whatever he wanted" while working for the county.

b.      On January 10, 2019, Mr. Poleki, representing Bannock County, said "It's disappointing to me as County Clerk that we did not press charges against Mr. Copeland." "Illegal things happened," and, "I can only imagine what was not found."

c.      On January 10, 2019, Mr. Poleki stated, "My job as a county auditor was to look into the numbers. When we saw discrepancies and asked for those reports, and those things weren't provided to my office, we started digging into the books and asking (county) employees." "That's when we found illegal activities."

d.      On January 10, 2019, Mr. Poleki said that several employees voiced concerns to a county liaison who reported public works issues to the county commission. He then said the commission did nothing.

e.      Previously, Mr. Poleki, representing Bannock County, had publicly implied that Mr. Copeland had stolen or misappropriated over $623,000 from the County.

COMPLAINT AND DEMAND FOR JURY TRIAL                                    6

f.   Throughout March of 2017 and January of 2019, Mr. Poleki, representing Bannock County, publicly implied that Mr. Copeland acted as if he were above the law, repeatedly engaged in criminal activity and self dealing at the public's expense, and committed criminal acts so frequently that even an investigation and audit could not reveal the full extent of Mr. Copeland's criminal activities.

g.   Mr. Poleki, representing Bannock County, also implied to the public that Mr. Copeland not only criminally stole money from the public, but that he caused the County to exhaust and waste money on auditing expenses in order to prove that Mr. Copeland was a crook.

h.   On January 10, 2019, Defendants published a confidential report which accused Mr. Copeland of having nefarious and criminal relations with Michaelson Construction.

i.   On the date of publication, Defendants implied that Mr. Copeland abused his position of trust with the community and committed criminal acts, including exploiting personal contacts and relationships with companies like Michaelson Construction, who mutually benefited from Mr. Copeland's illegal activities.

j.   On January 10, 2019, Mr. Poleki said the investigation cost around $2,000 to complete.

k.   On January 10, 2019, Mr. Poleki told KIFI/KIDK local news channel "We found a minimum of $6,000 - $7,000 that was used to improve Mr. Copeland's home…misuse of employee time and equipment,"

l.  Mr. Poleki further said, "But what we didn't find…I know there's more, I know there's more out there."

m.  Mr. Poleki's statements implied that he was personally aware of even more criminal misconduct by Mr. Copeland, but that the County had simply chosen to allow Mr. Copeland to get away with it.

n.  Mr. Poleki, representing Bannock County, implied that Mr. Copeland bilked the public out of a "minimum" of $6,000-$7,000 and implied he stole substantially more.

o.  Mr. Poleki's statements in January of 2019, made individually and while Mr. Poleki was acting as a representative of Bannock County, combined with statements made in March 2017 and in the fall of 2018, implied that Mr. Copeland was an embezzler, and that he had embezzled over $623,000 from the county.

p.  On March 14, 2017, Mr. Poleki, addressing the audit he initiated, was quoted in the Idaho State Journal as saying, "the audit will look at all Public Works funds and billing information. We've known for several months now that there were financial issues in the department and we are taking a proactive approach to continue to protect taxpayer dollars."

q.  On March 14, 2017, Mr. Poleki claimed the county had discovered financial discrepancies in the County's landfill budget and public works department, revealing that $623,000 was missing.

r.  These statements were later republished in the Idaho State Journal on August 6, 2018.

s.   Mr. Poleki, as a representative of Bannock County, implied that the discrepancy
     was the result of Mr. Copeland's misconduct, such as theft or embezzlement.

t.   As evidenced by social media and public responses to various news articles
     (repeating the unfounded accusations the Mr. Copeland was a thief and
     embezzler and had stolen $623,000 from the County landfill budget) the
     implication was repeated throughout August of 2018 and later.

u.   At other times in August of 2018, Mr. Poleki, as a representative of Bannock
     County, published that $623,000 in county funds was missing, and implied that
     Mr. Copeland was criminally responsible.

v.   As a result of the statements, news outlets, including the Idaho State Journal,
     published articles addressing the $623,000 shortfall.

w.   In response to Mr. Poleki's and Bannock County's statements, multiple people
     commented in the newspaper and social media, repeating the false allegations
     that Mr. Copeland was a thief and a crook and had stolen $623,000 from the
     county.

x.   At one point, when asked whether Mr. Poleki was stating that Mr. Copeland had
     stolen the $623,000, and whether Mr. Copeland's leaving his employment with
     the County was related to criminal misconduct, Mr. Poleki declined to comment;
     creating the implication that Mr. Copeland had in fact left his position with the
     County because of criminal misconduct.

y.   The initial allegations began at least as early as and around March 14, 2017, when
     Mr. Poleki, representing Bannock County, spoke with the Idaho State Journal and

stated: "We've known for several months now that there were financial issues in the department and we are taking a proactive approach to continue to protect taxpayer dollars," and "The commissioners are looking at options to restructure the department."

z. Mr. Poleki and the County's statements, particularly in context of the other statements, implied Mr. Copeland was an embezzler and a thief, and was responsible for the $623,000 missing from the county landfill budget and other misconduct.

41. The audits and investigations conducted in the case ultimately proved that the allegations published by Defendants were false.

42. Even after receiving and reviewing the audit and records, however, Mr. Poleki and Bannock County continued to publish that Mr. Copeland was a crook.

43. Mr. Poleki and Bannock County clearly implied that Mr. Copeland was a criminal who "got away with with it" on a mere technicality.

44. All Defendants, knew or should have known, that the implications they created in publishing the statements they made about Mr. Copeland, the missing money and other misconduct were not truthful and would damage Mr. Copeland.

45. Defendant Tom Sellers participated with Mr. Poleki and Bannock County, in the alleged investigation, and defamation of Mr. Copeland's good name.

46. Detective Tom Sellers of the Idaho State Police, acting in concert with or under Mr. Poleki and or Bannock County's direction, created police reports with slanderous and untrue or misleading information.

47.　According to individuals whose alleged statements were in Mr. Sellers' reports, Mr. Sellers  threatened them and pressured them to misstate the facts.

48.　Mr. Sellers prepared police reports which he knew or should have known would become public documents.

49.　Many of the statements in Mr. Seller's reports, which were published to the public on January 10, 2019  were defamatory to Mr. Copeland.

50.　Many statements in the public reports were prepared by Mr. Sellers or under his direction  and were made with reckless disregard for the truth of those statements.

51.　According to a follow-up investigation, conducted by the county, Mr. Sellers coerced, threatened or otherwise caused witnesses to make untrue statements about Mr. Copeland.

52.　The untrue statements obtained as a result of M. Sellers' coercion, threats, or mischaracterizations were relied upon by Deaton and Company, who prepared a forensic audit that Mr. Poleki and Bannock County published.

53.　The untrue statements obtained as a result of Mr. Sellers' coercion, threats, or mischaracterizations were relied upon by the public.

54.　As a result of Mr. Sellers actions and reckless disregard for Mr. Copeland's rights, a slanderous, inaccurate and untrustworthy forensic audit was published to the public.

55.　As a result of the untrue findings in the audit, Mr. Copeland was subjected to scorn, ridicule, and destruction of his reputation.

56.     Individuals repeated and perpetuated the false perception that Mr. Copeland was a crook, including a thief and embezzler, as implied by Mr. Sellers, Mr Poleki, and Bannock County.

57.     Mr. Poleki acted in conspiracy or consort with Mr. Sellers in making false statements and creating the false impression to the public that Mr. Copeland was a crook; stealing public money and property.

58.     Mr. Poleki and Bannock County, acted recklessly and/or maliciously when they published reports and the audit that had been established to be untrue and/or misleading.

59.     As a result of the publications, Mr. Copeland has been the subject of public and private shaming and his reputation has been significantly damaged.

60.     Mr. Copeland's ability to work in his field of expertise has been compromised, and he has been required to relocate and take work out of the State of Idaho because of Defendants' actions.

61.     The Defendants' actions were in most instances malicious and/or wanton; contrary to state, federal and constitutional law, and in some instances negligent and/or reckless.

62.     Plaintiff Dan Copeland suffered actual injury to his reputation and job seeking ability as a result of the Defendant's actions.

### COUNT I
### Due Process

63.     The preceding paragraphs are realleged and fully incorporated herein by this reference.

64. The Fourteenth Amendment guarantees individuals the right to procedural due process when "a constitutionally protected property or liberty interest is at stake." *Summers v. City of McCall*, 84 F. Supp. 3d 1126, 1149 (D. Idaho 2015).

65. "The government may not deprive a person of the freedom 'to engage in any of the common occupations of life' without due process." *Summers v. City of McCall*, 84 F. Supp. 3d 1126, 1149 (D. Idaho 2015).

66. The United States Constitution guarantees Mr. Copeland the right against any government taking of his liberty and/or property without due process of law pursuant to the Fourth and Fifth Amendments, which has been applied to the separate states pursuant to the Fourteenth Amendment.

67. Mr. Copeland has a constitutional property and/or liberty interest in his reputation and ability to work in his chosen profession.

68. The injury to Mr. Copeland's reputation was inflicted in violation of a federally protected right; and the injury to reputation caused the denial of a federally protected right. *Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999).

69. "[C]ertainly where the State attaches 'a badge of infamy' to the citizen, due process comes into play." *Smith v. State*, 146 Idaho 822, 827, 203 P.3d 1221, 1226 (2009).

70. Defendants attached a badge of infamy to Mr. Copeland by publishing claims of dishonesty, theft and misappropriation of public funds and by labeling him a thief, a liar and a criminal.

71.   "Failure to provide a 'name-clearing' hearing in such a circumstance is a violation of the Fourteenth Amendment's due process clause." *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004). "[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Board of Regents of State Colleges*, 408 U.S. at 573 (internal quotation and citation omitted). *Summers v. City of McCall*, 84 F. Supp. 3d 1126, 1151 (D. Idaho 2015).

72.   The information published by Defendants was published with knowledge that it was false and/or with reckless disregard of whether it was false or not. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S. Ct. 710, 726 (1964).

73.   *28 U.S. Code § 4101* defines defamation as: false speech which has caused damage to a person's reputation or emotional distress by presenting any person in a false light, resulting in criticism, dishonor, or condemnation of any person.

74.   Mr. Copeland was never given an opportunity for a hearing to address and dispute the County's allegations prior to Defendant's statements to the public and the press.

75.   Defendants violated Mr. Copeland's right to due process of law in violation of the Fourth, Fifth and/or Fourteenth Amendments to the *United States Constitution*, *42 U.S.C. § 1983* and the *Idaho Constitution*, Article I, Section 1 when they published false accusations to the entire community and state in the Idaho State Journal without providing a hearing or due process, which destroyed Mr.

Copeland's good name, reputation and honor, along with his ability to obtain work in his chosen profession.

76.     Due process protections are required where the state "makes a charge of 'dishonesty,' or attaches a 'stigma' to an employment decision...." *Summers v. City of McCall*, 84 F. Supp. 3d 1126, 1149 (D. Idaho 2015).

77.     The statements and accusations published by Defendants were stigmatizing and false. *Summers v. City of McCall*, 84 F. Supp. 3d 1126, 1150 (D. Idaho 2015)

78.     "Accusations of dishonesty or immorality are sufficiently stigmatizing to implicate a liberty interest." *Summers v. City of McCall*, 84 F. Supp. 3d 1126, 1150 (D. Idaho 2015).

79.     Defendants' actions herein were intentional and/or reckless, entitling Plaintiff to punitive damages, such as may be allowed by law.

80.     At all times described herein Mr. Poleki and Mr. Sellers were acting within the course and scope of their employment.

81.     At all times described herein Mr. Poleki and Mr. Sellers were acting under color of statute, ordinance, regulation, custom and usage of the state of Idaho and Bannock County.

82.     In his position as Bannock County Clerk, Mr. Poleki was an elected official and final decision and policy maker.

83.     Mr. Copeland is entitled to attorney's fees and costs for the maintenance of this action pursuant to *42 U.S.C. § 1988* and *I.C. 12-217*.

## COUNT II
## Constitutional Defamation

84.    The preceding paragraphs are realleged and fully incorporated herein by this reference.

85.    Mr. Copeland has a constitutional property and/or liberty interest in his reputation and ability to work in his chosen profession.

86.    Mr. Poleki, Mr. Sellers, and Bannock County inflicted harm on Dan Copeland by publishing information which labeled him a criminal and thief of public funds.

87.    At all times described herein Mr. Poleki and Mr. Sellers were acting within the course and scope of their employment.

88.    At all times described herein Mr. Poleki and Mr. Sellers were acting under color of statute, ordinance, regulation, custom and usage of the state of Idaho and Bannock County.

89.    As Bannock County Clerk, Mr. Poleki was an elected official and final decision and policy maker.

90.    Defamation by a government official forms the basis of a constitutional slander case under *42 USC §1983*, where there is otherwise independent harm resulting from the event.  *Cooper v. Dupnik*, 963 F.2d 1220 (9th Cir. 1992).

91.    The United States Constitution guarantees Mr. Copeland the right against any government taking of his liberty and/or property without due process of law, which has been applied to the separate states pursuant to the Fourteenth Amendment.

92.     Defendants deprived Mr. Copeland of a constitutionally protected property and/or liberty interest when Bannock County, Bannock County Clerk Robert Poleki and

Idaho State Policeman Tom Sellers published defamatory information about him without providing him the opportunity to clear his name.

93. Defendants acted, individually and/or in concert, under color of state law when they violated Mr. Copeland's Fifth and/or Fourteenth Amendment rights by defaming him, ruining his reputation, making it difficult for him to obtain employment in his chosen field, taking from him the property and liberty interests he possesses in his good name and reputation, and depriving him of his interest in clearing his name.

94. Defendants' conduct in making the above stated accusations, made without reliable proof, and knowing they were unfounded is so reckless and irresponsible that it shocks the conscience.

95. Mr. Copeland is entitled to attorney's fees and costs for the maintenance of this action pursuant to *42 U.S.C. § 1988*.

<u>**COUNT III**</u>
<u>**Defamation / Libel / Slander**</u>

96. The preceding paragraphs are realleged and fully incorporated herein by this reference.

97. Defendants communicated information concerning Mr. Copeland to the entire state by publishing it in the news and media.

98. The information impugned Mr. Copeland's honesty, integrity, virtue and reputation, and exposed him to public contempt and ridicule

99. Defendants knew, or reasonably should have known that the information they were publishing was false.

100.    Mr. Copeland suffered actual injury because of defamation by Defendants in that his honor, reputation and integrity have been called into question such that he has been rendered unable to find employment in his chosen field.

101.    As libel is the communication of defamatory information by written words, or by some form that has the characteristics of written words, Defendants have libeled Mr. Copeland through their publication of false and defamatory information in the Idaho State Journal.

102.    As slander is a form of defamation by any other means, Defendants have slandered Mr. Copeland by their publication of false and defamatory information to Bannock County employees and community members.

103.    Defendants statements and publications were made maliciously.

104.    Mr. Copeland has been damaged in excess of $500,000 by Defendants' defamation.

**COUNT IV**
**Bannock County Policy**

105.    The preceding paragraphs are realleged and fully incorporated herein by this reference.

106.    Robert Poleki, as Bannock County Clerk, was the final policy maker in his office.

107.    His acts represented official policy of Bannock County at the time when he published the false and defamatory information regarding Mr. Copeland.

108.    The deprivation of Plaintiff's federal rights are attributable to the enforcement of an unconstitutional practice, custom, or policy.

109.    An unconstitutional governmental policy can be "inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S. Ct. 915, 924 (1988).

110.    "Such a body may...be sued directly if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Monell v. New York City Dept. of Social Services*, 436 U. S. 658, 690 (1978). *St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S. Ct. 915, 923 (1988).

111.    "The isolated decision of an executive municipal policymaker... [can]... give rise to municipal liability under § 1983." *St. Louis v. Praprotnik*, 485 U.S. 112, 139, 108 S. Ct. 915, 932 (1988).

112.    Defendant Bannock County, through the statements, decisions and/or policies of Mr. Poleki, depriving Mr. Copeland of his rights to due process, including through denying him a name clearing hearing, defaming him, refusing to provide him with information to rebut or respond to unfounded public statements and ruining his reputation.

113.    Bannock County's actions damaged Mr. Copeland, including impeding his ability to obtain employment in his chosen field, and taking from him the property and liberty interests he possesses in his good name and reputation.

114.    Defendant's conduct in making slanderous, libelous and defamatory accusations was so reckless and irresponsible that it shocks the conscience.

COMPLAINT AND DEMAND FOR JURY TRIAL                                             19

115.   Defendant's conduct violated Mr. Copeland's right to due process of law, in violation of the Fourth, Fifth and/or Fourteenth Amendments to the *United States Constitution*, *42 U.S.C. § 1983* and the *Idaho Constitution* Article I, Section 1 when he, along with the other Defendants, destroyed Mr. Copeland's good name, reputation and honor through false accusations published to the entire community and state in the Idaho State Journal without a hearing or due process.

116.   Mr. Copeland is entitled to attorney's fees and costs for the maintenance of this action pursuant to *42 U.S.C. § 1988*.

## COUNT V
## Negligence

117.   The preceding paragraphs are realleged and fully incorporated herein by this reference.

118.   As Bannock County Clerk, Poleki had a duty of care recognized by law to verify defamatory information prior to publishing it.

119.   As an Idaho State Police Officer, Sellers had a duty of care recognized by law to verify defamatory information prior to publishing it.

120.   Defendant Poleki breached his duty of care by publishing false and defamatory information regarding Mr. Copeland listed above in paragraph 14 to Bannock County employees, and the residents of the entire state by publishing it in the Idaho State Journal prior to conducting any investigation or verification of the information.

121. Defendant Sellers breached his duty of care by coercing, threatening or otherwise causing witnesses to make untrue statements about Mr. Copeland, and then publishing them.

122. Poleki and Seller's conduct in publishing the false information caused the resulting injuries to Mr. Copeland's reputation and ability to obtain employment in his chosen field.

123. Defendants failed to exercise reasonable care to avoid injury to Mr. Copeland's reputation and ability to find work.

124. Due to his inability to find work in his chosen field, Mr. Copeland has been damaged by Defendants in a sum exceeding $500,000.

125. It was reasonably foreseeable that Defendants' breaches of their duties of care would result in this type of damage to Mr. Copeland's reputation and ability to find work.

126. Defendants are liable for their negligent acts under Idaho Code Title 6, Chapter 9.

127. Mr. Copeland is entitled to attorney's fees and costs for the maintenance of this action pursuant to *42 U.S.C. § 1988*.

## COUNT VI
## Implied Defamation

128. The preceding paragraphs are realleged and fully incorporated herein by this reference.

129. Defendants made statements by implication or context, conveying a false impression to those who heard or read the statements, and juxtaposed a series of facts so as to imply a defamatory connection between them.

130. A number of the defamatory statements by Defendants also created a defamatory implication by omitting facts, and the statements were not statements of opinion, but were presented as fact.

131. Through their conduct in publishing the defamatory statements, Defendants demonstrated that they intended to convey the defamatory information, and that they endorsed its publication.

132. Due to his inability to find work in his chosen field in Bannock and Bingham County, Mr. Copeland was forced to move to another state to seek employment.

133. Due to the defamatory implications by Defendants, Mr. Copeland was refused employment opportunities.

134. Due to his inability to find work in his chosen field because of Defendants' defamatory publications, Mr. Copeland has been damaged by Defendants in excess of $500,000.

135. The implicative statements by Defendants were false.

## COUNT VII
## Invasion of Privacy - False Light

136. The preceding paragraphs are realleged and fully incorporated herein by this reference.

137. As detailed herein above, Defendants Poleki and Sellers published false and defamatory information regarding Dan Copeland to the public in the Idaho State Journal and to Bannock County employees.

138. The false and defamatory information conveyed a false impression by portraying Mr. Copeland in a false light as a person who would misappropriate or steal money from the county taxpayers.

139. Any reasonable person of ordinary sensibilities would find this kind of action highly offensive and embarrassing.

140. Defendants published the information with reckless disregard as to its offensiveness, falsity and/or malice.

**WHEREFORE**, Plaintiff respectfully prays for judgment against Defendants as follows:

1. For recovery of all special and general damages sustained as a direct and proximate result of the Defendants wrongful acts, which acts include but are not limited to: defamation, both libel and slander, and violations of constitutional rights, and any other wrongful acts of the Defendants, in excess of $500,000;

2. For the recovery of all reasonable costs and attorney's fees pursuant to Federal law, including, but not limited to *42 U.S.C. § 1988*;

3. For any and all further relief the Court deems just and equitable;

4. Plaintiff demands a trial by jury in this matter.

DATED this 13th day of March, 2019.


 /s/ Bron Rammell
BRON RAMMELL