UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAN COPELAND,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF BANNOCK, STATE OF IDAHO; ROBERT POLEKI, individually and in his capacity as a County Clerk for the County of Bannock, TOM SELLERS, individually,<br><br>Defendants. | Case No. 4:19-cv-00089-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

There are two motions pending before the Court. First, Defendant Tom Sellers's Motion for Summary Judgment. Dkt. 20. Second, Defendants Bannock County's and Robert Poleki's (herein "County Defendants") Motion for Summary Judgment. Dkt. 29. The motions have been fully briefed, and the Court held oral argument on January 21, 2020. After careful consideration thereof, and for the reasons set forth herein, the Court will grant each motion.

**MEMORANDUM DECISION AND ORDER – 1**

# BACKGROUND

The claims in this matter arose out of Bannock County's investigations into past Director of Public Works, Dan Copeland. *Am. Compl.*, Dkt. 38 at 4. In 2017, the County, at the direction of Treasurer Robert Poleki, began investigating Copeland for potential misuse of public funds. *Id.* Tom Sellers, an Idaho State Police officer, was assigned to conduct an investigation into Copeland's alleged misuse of funds. Dkt. 20-1 at 3. On February 13, 2017, the County provided Copeland with a Notice of Proposed Termination Effective February 21, 2017, and a Notice of Suspension with Pay Pending Decision. Dkt. 29-3 at 8–13. The Notice of Proposed Termination included the following language:

> This Notice is provided to you to offer you an opportunity to meet with the Bannock County Board of County Commissioners (BOCC) or to submit to the BOCC in writing any response you desire the BOCC to consider before the BOCC makes their final decision regarding what action, if any, should be taken with regard to the matters that are under consideration at this time.

*Id.* at 8.

The Notice also provided Copeland with a specific time and date, February 21, 2017 at 3:00 p.m., for a hearing to be held before the BBOC. *Id.* Copeland did not request a meeting with the BBOC. Instead, Copeland provided the County with written notice of his retirement, effective February 21, 2017. *Notice of Retirement*, 29-3 at 5. Language in Copeland's notice indicated his retirement should not be construed as an admission of the allegations in the County's notices, but he did not

**MEMORANDUM DECISION AND ORDER – 2**

request a hearing. *Id.* In his response to the motions for summary judgment, Copeland disputes that his retirement had anything to do with the notices from the County, and alleges instead that he retired due to changes in his job duties and a toxic job environment. Dkt. 44 at 1–2.

Copeland filed the present lawsuit on November 14, 2019, and subsequently filed an Amended Complaint on November 14, 2019. *Am. Compl.*, Dkt 38. Copeland alleges that through their actions, Defendants have deprived him, without due process of law, of the freedom to engage in his chosen occupation, that Defendants have deprived his of is protected liberty and property interests in his reputation by failing to provide him a "name clearing" hearing, and that Defendants have committed common law defamation, libel, slander, negligence, and false-light invasion of privacy. *Id.*

In his pending motion, Defendant Sellers argues he is entitled to summary judgment on Copeland's claims because he did not violate Copeland's constitutional rights in performing the investigation into alleged wrongdoing at the direction of Bannock County, and is entitled to qualified immunity. *See* Dkt. 21-1. In turn, County Defendants' motion for summary judgment asserts that both of Copeland's federally-based claims fail as a matter of law. Defendants jointly argue the Court should grant summary judgment as to the federally-based claims and remand Copeland's state law claims district court.

**MEMORANDUM DECISION AND ORDER – 3**

# LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates "there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party initially bears the burden to show no material fact is in dispute and a favorable judgment is due as a matter of law. 477 U.S. at 323. If the moving party meets this initial burden, the non-moving party must identify facts showing a genuine issue for trial to defeat the motion for summary judgment. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). The Court must enter summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, a court does not make findings of fact or determine the credibility of witnesses. *See Anderson*, 477 U.S. at 255. Rather, it must draw all inferences and view all evidence in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587–88.

## DISCUSSION

As noted above, Copeland argues that Defendants failed to give him notice and an opportunity to contest the alleged defamatory statements made against him—and such actions deprived him of his liberty and property interest in his reparation without due process of law in violation of the Fourteenth Amendment. Similarly, Copeland claims that, by making stigmatizing statements that damaged his reputation, he has been unable to obtain work in his chosen profession. Copeland argues Defendants have violated his constitutionally protected liberty interests in the right to practice in his chosen profession.

A.   **Due Process Claim**

The Court turns first to Copeland's due process claim. He argues he was entitled, under the Fourteenth Amendment, to a name clearing hearing because the County Defendant's subsequent charges against him damaged his standing and associations in his community and imposed on him a stigma that foreclosed his freedom to take advantage of other employment opportunities. Dkt. 42 at 11–13. Notably, the United States Supreme Court has held that the right to a name clearing hearing does not exist where the publication of the stigmatizing material occurred after an employee voluntarily left government service. *Seigert v. Gilley*, 500 U.S. 226, 233–234 (1991).

The undisputed facts show Copeland was offered a hearing by Bannock County at the time disciplinary action was contemplated during his employment. Dkt. 29-3 at 8. Despite the offer of a hearing, Copeland chose to resign without engaging with the County. 29-3 at 5–6. Copeland contends his reasons for retiring were unrelated to the allegations detailed in the notices and was instead related to a toxic job environment. This fact, taken as true, does not change the facts related to the timing of Copeland's retirement and the subsequent alleged defamation. *See Resp. to Motion for Sum. Judg.*, Dkt. 42 at 12–13. The undisputed facts show also that the Defendants made no public statements about Copeland until mid-March 2017. *Am. Compl.*, Dkt. 38 at 10. The Court will therefore grant County Defendants' motion for summary judgment as to Copeland's due process claim.

B.  **Constitutional Defamation Claim**

The Court now turns to Copeland's constitutional defamation claim. As stated above, Copeland asserts protected liberty and property interests in practicing in his chosen profession have been violated by Defendants' damage to his reputation. Dkt. 42 at 4–5.

"Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991); *Ulrich v. City and Cnty. of San Francisco,* 308 F.3d 968, 982 (9th Cir. 2002). A party generally cannot constitutionalize a defamation claim. *Id.* However,

defamation in the context of governmental action defaming an individual in the course of an adverse employment action, such as termination, or by altering a right or status recognized by state law, could entitle the person to notice and an opportunity to be heard as to the defamation. *Ulrich*, 308 F.3d 968, 982 (9th Cir. 2002). This is referred to as a "stigma plus" claim. *Id.* Under the stigma plus test, a plaintiff must show public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, plus the denial of some more tangible interest such as employment, or the alteration of a right or status recognized by state law. *Id.*

In general, if a person resigns from their employment, and the stigmatizing statements are made some time after resignation, there is no termination, and thus no tangible employment interest damaged by the stigmatizing statements. Here, Copeland resigned, albeit under threat of termination, in February 2017. The undisputed facts show that the allegedly defamatory statements did not commence until March 2017. *Am. Compl.*, Dkt. 38 at 10. Thus, the defamatory statements were not made in connection with a deprivation of Copeland's employment—both because he resigned and, more importantly, because any statements were made weeks and months after Copeland's resignation.

However, even if one assumes the alleged defamatory statements were made by Bannock County in the context of an adverse employment action, or in

**MEMORANDUM DECISION AND ORDER – 7**

sufficient nexus to Copeland's retirement so that that the discharge itself may become stigmatizing in the public eye, there is no evidence in the record showing the alteration of a right held by Plaintiff or status recognized by state law – the required "plus." *See Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 983 (9th Cir. 2002) (defamatory statements made to the press one week after employee's discharge met the sufficient nexus standard).

To this end, in addition to being denied the name clearing hearing discussed above, Plaintiff alleges he has been denied the right to work in his chosen profession because his name and reputation have been sullied by Defendants' actions. Copeland asserts this right is protected by Idaho law as both a liberty and a property interest. Dkt. 42 at 7–8.

The two primary cases Copeland cites do not support his argument. First, *Huyett v. Idaho State University*, 104 P.3d 946 (Idaho 2004), where the Idaho Supreme Court found that a public university employee had no surviving property interest after the conclusion of a one-year contract term. The court found also, that the potential stigma created by placing an employee on administrative leave, was insufficient in itself to damage the employee's liberty interests in her reputation. *Id.* at 95. Even with factors not present here – a written contract – no liberty or property interest was recognized by the Idaho Supreme Court. Similarly, *Olson v. Idaho State University*, 868 P.2d 505 (Ct. App. 1994), does not support Copeland's

argument. *Olson* involved the university's decision not to renew a yearly employment contract. *Id.* at 508. There, the Idaho Court of Appeals noted the scope of a protected property interest is defined by the terms of an employment contract, and that an employee's liberty interest in reputation is not damaged by non-renewal of a contract for reasons of alleged employee insubordination. *Id.* Thus, both of Idaho's appellate courts have rejected Copeland's arguments under facts which present a stronger case than those presented here.

Forced to wrestle with a decision in this Court which seems to preclude his claim, Copeland argues that because his claim not brought "in the employment context" *Flowers v. City of Parma*, 2015 WL 4757330, at *7 (D. Idaho Aug. 12, 2015), is distinguishable. In *Flowers*, the Court held that because a mayor voluntarily resigned in the face of a potential recall based on allegations of misconduct, he had not shown he was forced to resign or was constructively discharged. *Id.* As such, the Court found there was no protectible liberty interest at stake. *Id.* Turning to the facts of this case, they seem materially indistinguishable from those in *Flowers*: When faced with the allegations of misconduct set forth in the notices of termination of pay and termination of employment, Copeland voluntarily resigned. Moreover, it is undisputed that he was provided an opportunity to be heard prior to termination and that he did not avail himself of that opportunity.

Further, under Idaho law, the right to work in one's chosen profession only arises where a state actor has, in some way, directly interfered with the ability of an individual to work in a particular profession. *See Tuma v. Bd. of Nursing*, 593 P.2d 711, 714 (Idaho 1979); *see also Rincover v. State, Dep't of Fin., Sec. Bureau*, 866 P.2d 177, 178 (Idaho 1993). The paradigmatic example of such a claim is a decision to withhold or revoke licensure in a particular field, i.e. medicine, accounting, etc. *Id.*

That is not the claim before the Court. Rather, Copeland claims that Defendants made defamatory statements which will interfere with his ability to find work in the future. This is an example of a state-law based defamation claim. Indeed, making false defamatory statements about one's work, is one of the discrete claims which was deemed to be libel or slander per se at common law. As such, Plaintiff has failed to show material facts in the record to support a claim of defamation that resulted in the deprivation of a constitutionally protected liberty or property interest. Therefore, the Court finds summary judgment is appropriate as to Copeland's constitutional defamation claims.

### 1. Claims Against Tom Sellers

Sellers argues he did not violate any of Copeland's constitutional rights, and as a government actor, is entitled to qualified immunity.

Sellers retired from his position as an Idaho State Police Officer in July 2018. Dkt. 20-1 at 3. However, before retirement, in November 2016, he was assigned to investigate the County's allegations that Copeland was using County resources and equipment for his personal benefit. *Id.* In his investigation, Sellers worked under the direction of Oneida County Attorney, Cody Bower, who had been assigned the investigation after Bannock County's attorney raised a conflict of interest. *Id.* Sellers performed a collection of interviews for the investigation. *Id.* He interviewed Copeland on January 11, 2017. *Id.* Sellers also interviewed County employees and others about Copeland's alleged misuse of County resources and equipment. *Id.* Sellers completed a report containing his findings and submitted it to Bower on January 20, 2017. *Id.*

In his Amended Complaint, Copeland contends Sellers participated with County Defendants in violating Copeland's Due Process rights by attaching "a badge of infamy" through the publication of claims that Copeland was dishonest, misappropriated public funds, and was a thief and liar. *Am. Compl.*, Dkt. 38 at 14. Specifically, Copeland alleges Seller's report contained alleged testimony that did not reflect interviewee's actual statements. *Id.* Copeland likewise asserts that Sellers participated in depriving him of a constitutionally protected property interest, i.e. that the publication of defaming information deprived him of the ability to work in his chosen profession. *Id.* at 17.

**MEMORANDUM DECISION AND ORDER – 11**

Qualified immunity shields government actors, such as police officers, from civil liability under 42 U.S.C. § 1983 if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an officer is entitled to qualified immunity, the Court analyzes two questions: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Thus, the Court's threshold inquiry is whether Sellers violated Copeland's constitutional rights to due process or is liable for the alleged constitutional defamation related to Copeland's liberty or property interests in reputation. As set forth above, Copeland fails to allege colorable federal constitutional claims in each respect. As such, the claims against Sellers also fail as a matter of law and the Court will grant Sellers's motion for summary judgment as to Copeland's federal claims.

**C.    The Court will decline to continue to exercise jurisdiction over the state law claims.**

Copeland has also made various state-law claims against Defendants, including defamation, negligence, implied defamation, and false-light invasion of privacy. *Am. Compl.*, Dkt. 38 at 17–24. A federal district court has discretion to remand a case to state court when all federal claims are resolved. *Carnegie-Mellon*

*Univ. v. Cohill*, 484 U.S. 343, 351 (1988). Generally, in determining whether to remand, the Court should consider a variety of factors, including judicial economy, convenience, fairness, and comity, points toward declining to exercise jurisdiction over the remaining state-law claims. *Id.* at n. 7.

In this matter, the Court finds, in the interest of comity and economy, remand of the remaining state law claims is appropriate.

## ORDER

**IT IS ORDERED that:**

1. Defendant Tom Sellers's Motion for Summary Judgment (Dkt. 20) is **GRANTED**.

2. Defendants Bannock County's and Robert Poleki's Motion for Summary Judgment (Dkt. 29) is **GRANTED**.

3. This case is remanded to the Sixth Judicial District Court of the State of Idaho, Bannock County for all further proceedings.

DATED: April 3, 2020

_____
B. Lynn Winmill
U.S. District Court Judge